The first case is DeWeaver v. Runnels. Good morning. Good morning. May it please the court. My name is Mary Pogalas. I represent the petitioner here, Emil DeWeaver, in this habeas appeal. The issues, as the court no doubt knows, have been extensively briefed, and I think pretty thoroughly by both sides. I want in this oral argument, well, first I'd like to reserve three minutes, so I'm going to try to keep my eye on the clock to make that happen. I would like to just highlight a few points and then otherwise submit it pretty much on the pleadings. I want to highlight especially the case of Taylor v. Maddox, which I addressed in my opening brief, particularly at pages 45 to 46 and in my reply at pages 10 to 11. It is the case that deals with the approach that this court should and can take in terms of the facts and the factual record in this case. In other words, you're right, given what happened here, to do a full pretty much non-deferential review of the facts. So I just want to make sure that that holding in Taylor doesn't get lost somewhere in the shuffle because I know normally it's exactly the opposite, that you would give high deference to the factual record below. In this case, I think that's not so because, as the Taylor court said, where the state courts plainly misapprehend or misstate the record, and here I'm talking about that crucial fact of the timing. Are you referring to your Miranda argument, not to the coercive jury instruction argument? Yes, that's Miranda now. Okay. Yes. Let me give you one suggestion. Yes, Your Honor. You know, we are terribly inhibited, curtailed, prevented from being judges in the full sense by what the Supreme Court says. We can only cite their decisions as governing federal law. It's not a good situation, but there it is. So please, to the extent you can, rely on the U.S. Supreme Court. Yes, Your Honor. I will. In terms of the U.S. Supreme Court, then, we can go right to Miranda, if we're going to talk about that, and to this Court's en banc decision applying. But now you've gone off. You've got to stay with Miranda. We can stay with Miranda. I'm just saying this Court has some precedence in terms of how the Ninth Circuit is applying Miranda in habeas petitions. Miranda says, and the Ninth Circuit clearly supported this en banc in Anderson v. Tuhune, that a suspect can invoke his right to silence at any time in any manner. The words, if he's using words that are used from Johnson v. United States, which is another Supreme Court case cited in my brief, it's – No. And so we have to say why the court, the state court, was objectively unreasonable in saying that I want to go back to my pod was an invocation of the right to remain silent. It was unreasonable on a couple of bases. One is that they relied upon cases. They entirely dismissed Miranda. I don't mean they said we're not going to listen to Miranda. They cited to it. But then they made their decision based entirely on cases from I believe it was the Fifth, the Seventh, and the Eleventh Circuit, something like that, which I also addressed in my brief, that simply had no application here. In other words, instead of looking to the Miranda decision, which is, as Justice Noonan points out, the United States Supreme Court controlling decision in this area, which says any time, in any manner, it doesn't call for particular words. In this case, I would argue to the court that when a suspect has waived Miranda, not knowing what the subject's going to be about, understandably thinking it's going to be about something not all that consequential. I mean, to him. So are you saying he signed the waiver before he knew that the people were from homicide? My understanding was his first question was, are you from ATF?  And he said, no, homicide. Then he said, I want to go back to my pod or whatever the statement was. And then after that, he waived, he signed the waiver. No, that is not the sequence of events. The sequence of events is that he was left there alone for a while. He was brought not at his request but at the officer's behest, put into a continuing custodial situation, left for about an hour or so. The officer came in, advised him of his Miranda rights. He signed and waived those rights. I mean, the suspect doesn't say that. Mr. DeWeaver didn't say that in his testimony. He claimed that he wasn't given his Miranda rights until way hours into it. Okay. The district court and the court of appeal and the trial court, the credibility finding was against him on that. So the decision below was no, the Miranda waiver was signed before the interrogation took place. So the waiver was signed, the interrogation began, and as the officer began to talk to him, which Sergeant Joyner himself says, as he began to open up the question of the homicide, Mr. DeWeaver became upset and agitated. He started crying. And he said, I want to go back. I want you to take me back to my pod. Is that what the district court found? That doesn't seem to coincide with my notes about what the district, I mean the state court actually found. The state court, well, I know that the district court, in affirming the state court, specifically said that the Miranda waiver happened before, that the request to go back to the pod was made and then the Miranda waiver was signed. If that were the case, I wouldn't even be here. I mean, that would be very clear. We're talking now about an invocation afterwards, which I think the record fully supports. I would have to go here to my brief to review that, the context of all of it. But I hate to use my time up to do that. If you want me to, I will. I can see I'm almost down to my three minutes. Do you want to reserve the rest? Maybe I'll look that up while I'm back at my desk and I'll reserve the remainder of my time. I only got through one of my five points, so I'll have to talk fast next time. Thank you. Thank you. May it please the Court, Juliet Haley appearing for the appellee, Runnels. Going on to the Court's question, I think the record is clear that the defendant was advised of his Miranda rights. He knew that he was being brought there for questioning related to the murder charge. He was being brought to the homicide department. He had been charged initially, arrested on gun charges and had waived his Miranda rights, I mean, had invoked his Miranda rights. A couple of days passed and then they got a removal order for him to bring him from the jail to meet with these detectives. And he was given his Miranda rights. He was advised. He waived them. He even initialed them. Well, when he says, I want to go back to my pod now, why doesn't that meet the Miranda standard if the individual indicates in any manner at any time prior to or during questioning? So wasn't that an indication if you say, I want to leave? Isn't that an indication that you don't want to talk at that point? Well, I think that it would be a different case if the detectives met with the defendant and told him the charges and said to him, you know, read him his Miranda rights, and he says, I want to go back to my cell. Then I think that would be within Miranda. But if he says it later, it's still the same problem that he is now invoking his right to remain silent or to get a lawyer. It doesn't have to be. I mean, you can sign something and waive your Miranda rights, but you can later change your mind. Absolutely. You can change your mind. That's what we're talking about here. I appreciate that. My point was simply that in what the Davis decision said, the United States Supreme Court decision in Davis said, once you've invoked your Miranda rights, then you say something that is not clear about ñ and they're talking about it's a counsel case, it's a right to counsel. If you say something that is ambiguous, that's not clear, the police are not required to cease questioning. What was ambiguous about what he said? He said he wanted to stop. That's what Miranda says. If you want to stop, all you have to do is to indicate you want to stop. There are no magic words. That's Miranda. No magic words. Do you understand that? Do you understand that? I understand that. He said, I want to stop. What more did he have to say? What he said was that he was in the middle. He went on for hours, and he said, I want to stop. So what were the magic words? Why was that inadequate? Because he didn't say, I don't want to talk to you. He didn't have to use those magic words. I don't want to talk. I don't think it's ñ I want to go back to my cell was not the same. No, I don't think it is. Why do you think there's a difference there? Because I think if you look at it in context, what happened there was that the detective was ñ he had just gone through waiving all of his rights. He had just ñ Exactly when this happened, do we? Yes, we do. What minute? He came into the cell. The detective began, asked him some preliminary information, his name. Read him his Miranda rights. He initialed the waiver at 1134. And shortly after that ñ When he started asking him about the homage. He started telling him. He started saying, this is some of the evidence against you. And the defendant was having this ñ Well, the minute he realized it was a homicide case, he said he wanted to go back, didn't he? He said, I want to go back to my cell. And the detective said to him, according to the detective, he said, look, the detective understood this. He understood he didn't want to talk about the homicide. He didn't want to deal with the evidence against him. That's exactly the issue. He didn't want to deal with the homicide. The detective understood that, as you shall say. He didn't want to talk about it. He felt that he was having ñ the experience in talking to this guy was that he was upset, recognizing what the evidence was. Of course he was upset. The next thing out of his mouth is, can I see that photo lineup? And the question is, what the Supreme Court has said is that when officers are trying to discern that you have somebody who's in a different position, they've now been ñ they have acknowledged their rights, they have chosen to waive them, they've been informed of them, and now you're trying to put police in a position of when are they supposed to be on notice, what is a reasonable action for them to take, when are they supposed to figure out precisely what's going on. And the Supreme Court said it has to be unambiguous. You think, well, I guess you and I have different ideas of what's ambiguous. I think that what we have is that there have been saying ñ when someone just gets up and says, oh, you know, I can't deal with this. But you just signed a waiver that you wanted to talk to the detectives. And then you just said, okay, so what is the evidence you have against me? Am I invoking? He didn't know it was a homicide investigation when he signed the waiver, did he? Yes, he did. Well, can you just walk through what the state court indicated was the sequence of events in the interrogation? Yeah. The state court's sequence of events were that ñ I think I've kind of articulated them. I'll reiterate them. But what we have is ñ I mean, the state court's events are that the defendant is arrested on gun charges. They find ñ he has this ñ He found the interrogation. Okay. So he's brought over from ñ he's invoked. Two days pass. He's invoked on the gun charges. He said, I don't want to talk about the gun charges. Two days later, he's brought by a different detective over to the homicide to talk about ñ his name has come up. There's been some suggestion with this identification in the murder of Evans. So he's brought over there. He sits in an interrogation room. The officer starts the interview. He says at 11.30 it shows some sort of a log. Within the first couple of minutes, he introduces himself, tells him why he's here, tells him, you know, gets some preliminary information about him, then reads him his Miranda rights. And the defendant goes through a Miranda form and initials it and signs it and clearly waives his rights to talk. All right. That ñ I don't think any of us have a problem with that. But the real key is whether he then revoked that. And so what are the circumstances as you see it with regard to the verification? The circumstances are that saying ñ you mean what he did, what he said? So he signed his waiver and then another topic is brought up and he says, I want to go back to my pod. Is that ñ What happens is that he starts talking ñ the detective starts confronting him with some of the information. He tells him that they've got a witness because at first he's denying that he was even there. And then he ñ you know, it starts to hit him. I mean, this is what the detective says. Yeah, he's getting ñ you know, he's upset that it hits him that this is ñ that there's a lot of this evidence against him, that people are putting him at the scene. And he says ñ What did he do then? Then is when he says, I just want to go back to the jail cell. He said ñ what was that? He says, I would like to ñ I want to go back to the jail cell. The detective says, I didn't ñ I thought it was a momentary lapse. He says, I didn't interpret it as him invoking. He's asked about it. And then ñ Why would he want to go back to the jail cell if he wanted to continue talking? Why what? Why would he want to go back to the jail cell if he wanted to continue discussing the matter? I think that he ñ I think what happens in these things is ñ I mean, honestly, I think that when you listen to some of these tapes and what this dynamic, the way it sounded, is that he's upset. He's like, I'm going to be ñ I'm going to be in prison again. I spent my last birthday in prison. Do you know that I have a ñ do you know that I have a ñ my wife's expecting, my girlfriend's expecting a baby. I mean, this is like two people talking. This is not ñ I mean, he's ñ you know, the officer's not sitting there saying, okay, so now you want to stop. I mean, he gets up and he's like, I want to go back to my cell. And the officer says, look, I'll take you back to your cell. You know, you want to hear ñ but this isn't going to go away. And he says, okay, let me see the photo lineup. Let me see. Did he make any other requests? No. So that was the one statement. That's it. And the state court said ñ That wasn't an invocation. That it was not an invocation.  Right. And what would we ñ what's the EDPA standard for the determination of that? Determination. Would you say it's an unreasonable application of Miranda? It would be an unreasonable application of the facts. I mean, an unreasonable application of the facts to Miranda. The indication that you want to stop is enough. It wasn't any indication. That's if ñ I mean, the question is many courts, you know, and the state court relied on several other Federal appellate courts that have found that saying, you know, just take me to jail, just take me to jail after a defendant is invoked is not an invocation of the right to silence. Many courts have reached the same conclusion, that just ñ that people doing a momentary just ñ I don't want to be ñ Governed by the United States Supreme Court. And what the United ñ Miranda said. And what the ñ there is an open question. The United States Supreme Court, as this court, I think, recognized ñ I mean, I think it was the dissent on a couple of occasions has pointed out that when you put U.S. Davis, which is about Miranda post a waiver, the United States Supreme Court says, we are going to not put officers in this position. Once you've gone through the Miranda waiver and you have waived those rights, you've been informed of those rights, you need to make an unambiguous request to then re-invoke those rights. And this court has not ñ and every court of appeal, this court has explicitly reserved that question, whether Davis applies as well to the right to ñ invoke your right to remain silent, as it does to counsel. But every single court of appeal to consider the issue has said that Davis, the rationale of Davis, applies to both. What happened then afterward? He said, I wanted to go to the cell. What was it he said after that's a problem? What did the defendant say? The defendant went on. After that, he said, I want to see the lineup, you know, show me what you've got. And the defendant ñ the detective told him about it. They talked about it. And basically, the defendant ñ I mean, he moved from I wasn't there, which was his initial statement, to saying I was there. I didn't ñ you know, I shot ñ and he went through the whole ñ you know, the case. I mean, it was ñ he didn't ñ I mean, it was consistent with his defense at trial, which is that he just didn't ñ he didn't intend to kill. He intended to scare. He said nothing more about invoking his right to silence or about an attorney. Nope. And he, in fact, went on tape, got re-Moranized, re-initialized, said at the end of the tape, this has been a voluntary statement, nobody's been pushing me to do any of this. Okay. You're over your time now. Okay. Thank you very much. Thank you. Well, the most interesting thing I heard there was counsel's concession that had these exact words been used when the Miranda waiver was given, it would have been an invocation of the right to silence. She said that at the start of her argument. What exact words? Take me back to my jail pod. I didn't hear her say that, concede that. Okay. I heard that right away at the start of her argument. I was surprised. Wait a minute. That's the issue we're dealing with is whether that's enough. Then he talked thereafter. Yes. And didn't ñ We could check with counsel, but I believe she conceded that had he said that ñ I'm not interested in what you conceded here. What I'm interested in is what happened. Yes. All right. Okay. I have, as you requested here, this is a quick check. On page 28 of the excerpts of record, there is a summary of the interrogation. The court of appeal found at some point during the interrogation, defendant asked to be returned to his jail pod. So we don't know the time. Well, they don't find a time. But the record citations that I have in my brief confirm that it was before. So I'll look now to ñ I have it here, Your Honor, at excerpts of record 109, which is the testimony of Sergeant Joyner. He was asked there, now, before you spoke with Mr. DeWeaver, did you admonish him regarding his Miranda rights? Yes, I did. And did you inform him of his rights, et cetera? And it goes on to how he signed it. And thereafter, they begin to talk. So it's clear the waiver was signed before any discussion, conversation, interrogation began. But at what point, at what time did he ask to go back to his cell? Sergeant Joyner was unclear about that in his testimony, but he did ñ the court found that it was at some point during the interrogation. So counsel for the government was wrong in saying it was immediately after. There's no evidence of that. Is that correct? No. No. In fact, it's ñ Was there only that one request to go back to his cell? He made the request to go back to his cell. That was denied. And then he made a request to be able to call his girlfriend, and that was also denied. Are you saying a request to call his girlfriend is an invocation of his right to remain silent? In context, I think it was another effort to stop the interrogation and have some time to figure out what he wanted to do before he proceeded. And isn't that ñ excuse me. Go ahead. Isn't that very ambiguous? That is ambiguous, but not following upon take me back to my jail pod. I want to make one really important point here, though, because there's been a lot of discussion about Davis and it has to be unambiguous and et cetera. Davis involved the right to counsel. This is the right to remain silent. They are entirely different, and the Supreme Court has never applied Davis to invocations of the right to silence, ever. It's never applied that rule outside of invocation of the right to counsel. The en banc ninth circuit has made a decision in Anderson v. Terhune that invocation of the right to silence is governed by the language of Miranda, not by Davis. So I think that's dispositive in this circuit. And if other circuits disagree, they disagree. But the en banc ninth circuit has spoken to that point. So the defendant made the request to return to the jail cell and made the request to call the girlfriend. Were there other language that you would indicate would be an invocation? No. I think that was it. But I would like to just quickly refer you in Anderson where the en banc court said, I'm through with this, I'm through, I want to be taken into custody. The court describes that as crystal clear language. This is not far from that. In Anderson, of course, he went even one step further when they continued to disregard him and said, you know, I plead the fifth. Now, that is clear. But they don't require that you say I plead the fifth or anything like that. They cite it because it shows the sort of the outrage of the court and the extent to which this right was being ignored. But they clearly say here, I'm through with this, I'm through, I want to be taken into custody. That was what the defendant said. And they said that is crystal clear language. I don't see that Mr. DeWevers was much different. Thank you. The case of DeWevers v. Reynolds is submitted.
judges: Hug, Noonan, Ikuta